**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**SUSAN ELIZABETH TRATAR,**

         **Plaintiff,**               **CIVIL ACTION NO. 13-cv-12262**

      **v.**                      **DISTRICT JUDGE AVERN COHN**

**COMMISSIONER OF**              **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

         **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

    Plaintiff Susan Elizabeth Tratar seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 10) and Defendant's Motion for Summary Judgment (docket no. 13). Plaintiff filed a Response to Defendant's Motion. (Docket no. 14.) The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 2.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.**    **RECOMMENDATION**

    The undersigned recommends that Plaintiff's Motion for Summary Judgment (Docket no. 10) be DENIED and that Defendant's Motion for Summary Judgment (Docket no. 13) be GRANTED.

## II.      PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income with a protective filing date of January 19, 2010, alleging disability beginning December 30, 2007, due to scoliosis.  (*See* TR 75, 225.)  The Social Security Administration denied Plaintiff's claims on April 20, 2010, and Plaintiff requested a *de novo* hearing.  (TR 75.)  On February 15, 2011, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Gregory Holiday.  (TR 75, 83.)  In an April 5, 2011 decision, ALJ Holiday found that Plaintiff was not entitled to benefits.  (TR 75-83.)  Subsequently, the Appeals Council remanded the case for further consideration of Plaintiff's residual functional capacity.  (TR 88-89.)  Pursuant to the remand order, Plaintiff appeared with a representative and testified at a hearing before ALJ Roy L. Roulhac on December 20, 2011.  (TR 13, 22.)  In a January 24, 2012 decision, ALJ Roulhac found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy.  (TR 13-22.)  The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.     HEARING TESTIMONY AND MEDICAL EVIDENCE

### A.      Plaintiff's Testimony

Plaintiff was 43 years old at the time of the administrative hearing and 39 years old at the time of alleged onset.  (TR 15, 57.)  First, Plaintiff was examined by the ALJ.  Plaintiff testified that she was currently working as an orthodontic assistant one day per week for four hours and as a cashier one to two days per week for four hours at a time.  (TR 57-58.)  Plaintiff stated that she had never worked full time as a cashier but that she had worked full time as a dental assistant, and before

2

that she was a secretary.  (TR 58-59.)  She told the ALJ that she did not do any lifting at her dental assistant job and that she did not have to bend, stoop, or kneel as part of her cashier job.  (TR 58, 62.)  Plaintiff then affirmed that her earnings record was correct in that she had no earnings over $4,000 at one place.  (TR 59.)  Based on her response, the ALJ found that Plaintiff had no past relevant work.  (TR 59.)

Plaintiff testified that she lived with her husband and three children, ages fifteen, thirteen, and nine.  (TR 59.)  She noted that she had health insurance.  (TR 59.)  Plaintiff then testified that on a typical non-workday, she would take her children to school, clean up the breakfast dishes, do some light housekeeping, take a shower, and read a lot.  (TR 59-60.)  Plaintiff told the ALJ that she could bathe, groom, and dress herself; dust, do some dishes, and fold laundry; drive; and do some light shopping.  (TR 60, 64.)  Plaintiff testified that she could lift about fifteen pounds, walk a couple blocks, stand for four hours with a fifteen minute break, and sit for about two hours before needing to get up and move around.  (TR 60-61.)

Plaintiff testified that she had back surgery in 2008.  (TR 63.)  She claimed that her doctor told her that she needed the surgery, otherwise she would die from scoliosis before she would die of old age.  (TR 63.)  Plaintiff confirmed that a post-operation x-ray revealed an excellent correction in the curve of her spine.  (TR 63.)  She also testified that she could breathe better after the surgery and hoped that it would extend her life because her internal organs were no longer being crushed.  (TR 63.)  Plaintiff further testified that the surgery brought on a different kind of pain.  (TR 63.)  She added that it also caused a strain in her right shoulder because her shoulder was moved to its correct location during the surgery, which stretched her tendons and muscles to the point that she could no longer lift her arm beyond a certain point.  (TR 64.)  Plaintiff said that she asked her doctor at her two-year check up if that was the best she was going to get and that her doctor responded, "yeah,

3

your back is messed up.  I helped you so that you wouldn't die, but your back is still messed up."
(TR 63.)

Plaintiff testified that her biggest issue at the time of the hearing was that her back pain was
not going away.  (TR 63.)  Plaintiff stated that she used Motrin, Tylenol 1000 mg, and a heating pad
to dull her pain.  (TR 62.)  Plaintiff told the ALJ that her pain level on a typical day was at a two out
of ten, but it bumped up to a four or five in the spring of 2011.  (TR 62.)  She elaborated that the
pain spread across her lower back and down her leg and resulted in tingling and numbness and that
her right leg would give out every once in a while.  (TR 62.)  Plaintiff testified that she went to her
doctor due to the increase in pain and then had a CAT scan, which revealed that she had a pinched
nerve in her back.  (TR 61, 62.)  She elaborated that she decided to try some physical therapy for
her pinched nerve, even though her doctor told her that she didn't have a lot of mobility.  (TR 61.)
Plaintiff testified that she attended two sessions of physical therapy in August of 2011 but had to
discontinue it because her husband lost his job along with their health insurance.  (TR 61.)  She
noted that her family just got its health insurance reinstated in December of 2011.  (TR 61.)  Plaintiff
testified that she thinks that her days of working part-time as a cashier and orthodontic assistant are
coming to an end because "it's just too painful to be there."  (TR 63.)  She added that the pain is
affecting her cashier job in that she has to let shifts go and call in sick.  (TR 63.)

Next, Plaintiff was examined by her attorney.  Plaintiff testified that she had not been able
to work an eight hour day since 2008 because she was not able to sit or stand that long.  (TR 64.)
She added that she needed an opportunity to lay down and decompress her back.  (TR 64.)  Plaintiff
elaborated that she would lie down twice per day, once in the morning, once in the afternoon, for
about an hour each time.  (TR 64-65.)  Plaintiff stated that after working for four hours, she would
feel very tired and would need to lie down immediately to relieve her pain.  (TR 65.)  She told her

4

attorney that four hours is the longest period of time that she can do any kind of activity before she needs to lie down.  (TR 65.)  When asked why she does not take narcotic medication for her pain, Plaintiff stated that she did not like the way it made her feel.  (TR 65.)  She added that she would get very drowsy and lightheaded when taking narcotic medication, which made it difficult for her to care for her children.  (TR 65.)

Plaintiff testified that the longest period of time that she could perform housework was about a half hour per day, and not every day.  (TR 65.)  She told her attorney that she cooked sometimes, mostly on the stove top or in the Crockpot, and that she wasn't able to put a heavy roast or turkey in the oven.  (TR 65-66.)  Lastly, Plaintiff's attorney asked her how long she could work if she had a job that allowed her to sit or stand at will.  (TR 66.)  Plaintiff responded that she could probably work four to five hours per day because either sitting or standing for that long would cause her to eventually need to lie down.  (TR 66.)  She further explained that sitting compresses the spine, which hurts just as much as standing.  (TR 66.)

### B.    Vocational Expert's Testimony

First, the Vocational Expert (VE) confirmed that his testimony would be consistent with the Dictionary of Occupational Titles (DOT).  (TR 66.)  Next, the ALJ informed the VE that he was going to conclude that Plaintiff did not have past relevant work due to the lack of work in Plaintiff's record at the level of substantial gainful activity.  (TR 66.)  The ALJ then asked the VE whether a hypothetical person of the same age and education as Plaintiff with no past relevant work experience who "could perform work at the light exertional level, lifting and carrying not more than twenty pounds occasionally, ten pounds frequently, standing and walking six hours, [and] sitting two hours," who "could enjoy a sit/stand option at will with occasional ramps and steps climbing, balancing, stooping, kneeling, crouching, and crawling, [and] who should avoid unprotected heights,

5

vibrating tools, and moving machinery" would be able to perform any jobs.  (TR 66-67.)  The VE testified that there would be unskilled work at the light exertional level that the hypothetical individual could perform such as (1) an information clerk, for which there were 4,000 positions available in the southeastern Michigan regional labor market and greater than 250,000 in the national economy; (2) a lobby attendant, for which there were 2,500 positions locally and greater than 100,000 nationally; and (3) a hand packager, for which there were 2,500 positions in the local economy and greater than 100,000 in the national economy.  (TR 67.)

The ALJ then asked the VE to consider whether there would be any jobs for a second hypothetical person, assuming all of the conditions of the first hypothetical, but limiting the work to the sedentary level, which means sitting down, lifting and carrying not more than ten pounds occasionally, sitting for six hours, and standing and walking for two hours with a sit/stand option at will.  (TR 67.)  The VE responded that there would be unskilled work at the sedentary exertional level for such an individual, such as (1) an information clerk, for which there were 4,000 positions available locally and greater than 250,000 nationally; (2) a hand packager, for which there were 3,250 positions in the regional labor market and greater than 200,000 in the national economy; and (3) a security monitor, for which there were 1,500 positions in the local labor market and greater than 120,000 nationally.  (TR 67-68.)

Next, the ALJ asked the VE whether there would be any jobs available to the hypothetical individual where the person would be off task more than 20 percent of the day secondary to an inability to stand and an inability to maintain attention, concentration, or pace for eight hours per day.  (TR 68.)  The VE testified that there would be no competitive, full-time employment available to such an individual.  (TR 68.)  Lastly, Plaintiff's counsel asked the VE whether gainful employment would be precluded if the last hypothetical person had to lie down every four hours for

6

one hour.  (TR 68.)  The VE responded affirmatively.  (TR 68.)

### C.   Medical Evidence

Plaintiff (docket no. 10 at 3-5), Defendant (docket no. 13 at 9-11), and the ALJ (TR 17-19) each set out a factual background related to Plaintiff's medical record.  The undersigned has also conducted an independent review of Plaintiff's medical record.  In lieu of summarizing Plaintiff's medical history, the undersigned will make references and citations to the record as necessary in response to the parties' arguments.

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015; that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 30, 2007; and that Plaintiff suffered from the following severe impairments: scoliosis, right shoulder strain, and low back pain.  (TR 15-16.)  The ALJ also found, however, that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 16.)  The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant requires a sit/stand option at will.  The claimant can occasionally climb ramps or steps, balance, stoop, kneel, crouch, and crawl.  The claimant should avoid unprotected heights, vibrating tools, and moving machinery.

(TR 16-20.)  Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 21-22.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from December 30, 2007, through the date of the ALJ's decision.  (TR 22.)

## V.   LAW AND ANALYSIS

A.       **Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

B.       **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

8

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

    **C.    Analysis**

    The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the

pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of

the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where

there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a

sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at

*8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).  Plaintiff asserts that this matter should

be reversed and remanded under sentence four because the ALJ (1) erred in assessing Plaintiff's

credibility; (2) erred in applying the treating physician rule to Plaintiff's treating physician, Dr.

Jerome Bekker, D.O.; (3) incorrectly summarized the findings of Dr. Amer Arshad, M.D.; and (4)

made an incorrect RFC finding.  (*See* docket no. 10.)

### 1.   The ALJ's Assessment of Plaintiff's Credibility

Plaintiff argues that "the ALJ's failure to credit [P]laintiff's testimony regarding her

limitations is not supported by substantial evidence in the entire record.  (Docket no. 10 at 12.)

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and

deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and

credibility."  *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997).  But credibility assessments are

not insulated from judicial review.  Despite the deference that is due, such a determination must

nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility determination must

contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently

specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator

gave to the individual's statements and the reasons for that weight."  SSR 96–7p.  "It is not sufficient

to make a conclusory statement that 'the individual's allegations have been considered' or that 'the

allegations are (or are not) credible.'"  *Id.*  "[T]he adjudicator may find all, only some, or none of

an individual's allegations to be credible" and may also find the statements credible to a certain

10

degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight the he gave to Plaintiff's statements and the reasons for that weight. After a thorough discussion of Plaintiff's testimony and medical record, the ALJ began his discussion of Plaintiff's credibility by finding that the objective medical evidence weighed heavily against Plaintiff's allegations. (TR 17-19.) The ALJ specifically noted inconsistencies between Plaintiff's allegations of severe pain at the hearing and the lack of complaints of such pain in the record. (TR 20.) With regard to this inconsistency, the ALJ found "no indication in the record that [Plaintiff's] pain is so severe that she is required to lie down for an hour every four hours," and he further noted that none of Plaintiff's physicians indicated that such a limitation was necessary. (TR 20.)

The ALJ then considered the factors listed in 20 C.F.R. § 416.929(c)(3) in determining Plaintiff's credibility. In doing so, the ALJ discussed Plaintiff's ability to handle her personal needs,

11

care for her children, prepare meals, do light housekeeping, drive, shop, and attend her children's

sporting events.  (TR 20.)  The ALJ reasoned that there was no record that Plaintiff suffered from

a significantly limited range of motion, muscle or motor weakness, atrophy, sensation loss, reflex

abnormalities, or a neurological defects, which are conditions and limitations normally associated

with intense or disabling pain.  (TR 19.)  The ALJ considered the relief that Plaintiff received from

physical therapy and Plaintiff's ability to manage her pain through ibuprofen, heat, and stretching

exercises; he further noted that she suffered no side effects from the ibuprofen.  (TR 19, 20.)  The

ALJ factored into his decision the fact that Plaintiff had sought very limited treatment for her alleged

pain and found that lack of treatment to reflect poorly on Plaintiff's credibility.  (TR 20.)  Finally,

the ALJ noted the lack of any recorded residual limitations with regard to Plaintiff's right shoulder

after completing physical therapy and added that she hadn't reported any trouble with bathing,

dressing, or caring for her hair, which require overhead and lateral reaching.  (TR 19.)

　　　While Plaintiff does point to evidence in support of her assertions, the ALJ provided a

detailed analysis and more than a scintilla of evidence to support his conclusion.  And where the

Commissioner's decision is supported by substantial evidence, it must be affirmed, even if

substantial evidence also supports the opposite conclusion.  *See Her,* 203 F.3d at 389-90.

　　　　　　2.　　*The ALJ's Assessment of the Medical Opinions of Record*

　　　　　　　　**a.　　Dr. Jerome Bekker, D.O.**

　　　Plaintiff asserts that the  ALJ should have afforded controlling weight to Dr. Bekker's

opinion regarding Plaintiff's disability (docket no. 10 at 8-10); Defendant counters that the ALJ

properly assigned Dr. Bekker's opinion little weight (docket no. 13 at 13).  The ALJ must give a

treating physician's opinion complete deference if it is supported by clinical and laboratory

diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20

12

C.F.R. § 404.1527(c)(2). It is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should

13

be rejected.   Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Additionally, the Sixth Circuit has upheld the decision of an ALJ which gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision. *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir. 2008).   There is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)).   Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson*, 378 F.3d at 547).

On February 4, 2011, Plaintiff's treating physician, Dr. Jerome Bekker, D.O., authored a handwritten note, apparently in support of Plaintiff's application for disability benefits:

> Susan Tratar DOB 10/1/68 has been my patient for many years and has a history of significant scoliosis.  She underwent surgery to help the symptoms which included pain [] and poor posture.  In spite of the very aggressive surgery the patient still has pain and has difficulty with activities of daily living.  She is unable to work as a result of her ongoing pain.

(TR 375.)  The ALJ assigned "limited weight" to Dr. Bekker's opinion because (1) it was not well supported by the objective findings in Dr. Bekker's own treatment notes or those of Plaintiff's treating orthopedic surgeon; (2) it was based upon Plaintiff's subjective complaints; (3) it was conclusory; (4) it was inconsistent with Plaintiff's statements regarding her daily living activities

14

and her earnings record; (5) it did not contain a function-by-function analysis; and (6) Dr. Bekker's finding of disability was within the ALJ's purview.  (TR 18-19.)

Dr. Bekker's opinion consisted mostly of facts, included a short sentence regarding Plaintiff's pain and daily living activities, and concluded that Plaintiff was unable to work.  It does not discuss Plaintiff's limitations, include any references to his treatment notes, or provide any further explanation.  Contrary to Plaintiff's assertion, the ALJ was not required to give controlling weight to the portion of Dr. Bekker's opinion that Plaintiff was "unable to work" because such a determination is consistent with a finding of disability, which is an issue reserved to the Commissioner.  Furthermore, the ALJ is under no obligation to accept a treating physician's conclusory medical opinion if it is inadequately explained and not supported by specific findings. The undersigned finds that the ALJ appropriately reviewed the evidence of record and gave sufficiently good reasons for discounting the opinion of Dr. Bekker; Plaintiff's Motion should be denied with regard to this issue.

### b.    Dr. Amer Arshad, M.D.

On March 19, 2010, Dr. Amer Arshad, M.D. performed a consultive physical examination of Plaintiff at the request of the State of Michigan's Disability Determination Service.  (TR 18; 367-69.)  Plaintiff argues that the ALJ ignored Dr. Arshad's findings that Plaintiff has some residual scoliosis, a decreased range of motion in her lumbosacral spine, and muscle spasms.  (Docket no. 10 at 7-8; TR 367-68.)  Plaintiff is mistaken, however, as the ALJ specifically noted these findings in his summary of Dr. Arshad's report:  "[p]hysical examination revealed a moderate decrease in range of motion of the lumbar spine with muscle spasm and a slight deformity of the chest wall." The ALJ also noted that "Dr. Arshad assessed scoliosis, status post surgery and back pain."  Plaintiff further argues the ALJ incorrectly summarized Dr. Arshad's findings by stating that Plaintiff had

15

a full range of motion in all joints, including in her right shoulder.  (*Id.* at 8; TR 18.)  To the contrary, the ALJ's statement is an accurate summary of Dr. Arshad's findings: "[w]rists, elbows and shoulders do not show any swelling, redness or tenderness.  Range of motion is normal."  (TR 368.)  Thus, Plaintiff's arguments fail with regard to the ALJ's assessment of Dr. Arshad's report.

### 3.     *Plaintiff's Residual Functional Capacity*

Plaintiff argues, in general, that the ALJ's RFC determination was improper, but the ALJ is only required to incorporate in a claimant's RFC (and the hypothetical questions to the VE) those limitations that the ALJ finds credible and supported by the record.  *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).  Here, the ALJ included in Plaintiff's RFC those limitations that the ALJ found credible.  Thus, in substance, Plaintiff's assertion that the RFC is inaccurate is merely a collateral attack on the ALJ's decision not to credit Plaintiff's testimony and his determination with regard to Dr. Bekker's opinion, both of which are addressed by Plaintiff's prior arguments.

## VI.     CONCLUSION

For the reasons stated herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment (docket no. 10) be DENIED and Defendant's Motion for Summary Judgment (docket no. 13) be GRANTED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections

constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 13, 2014          s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 13, 2014          s/ Lisa C. Bartlett
                                Case Manager